## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANKIE D. HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Case No. 19-2354 (RJL) |
| | ) |
| DEPARTMENT OF DEFENSE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(March __16th__, 2021) [Dkt. ## 11, 12]

Plaintiff Sergeant Frankie D. Hall ("plaintiff" or "Hall"), an Army veteran, brings this suit against the Department of Defense ("defendant" or "DoD"), challenging the Physical Disability Board of Review's ("PDBR" or "Board") decision finding that plaintiff's obstructive sleep apnea was not "unfitting" for continued military service at the time of his medical separation from the Army. Plaintiff contends that the Board's decision was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq. See* Compl. ¶¶ 12-14 [Dkt. #1]. Before this Court are the parties' cross-motions for summary judgment. *See* Pl.'s Mot. for Summ. J. [Dkt. #11] ("Pl.'s Mot."); Def.'s Mot. for Summ. J. [Dkt. # 12] ("Def.'s Mot."). For the following reasons, defendant's motion for summary judgment [Dkt. # 12] is **GRANTED**, and plaintiff's motion [Dkt. # 11] is **DENIED**.

1

## BACKGROUND

### I.    Statutory Scheme.

Under 10 U.S.C. § 1201 *et seq.*, Congress established a statutory framework under which DoD determines whether a member of the military is medically fit for duty and, if not, whether that member should receive a disability rating and compensation for the medically unfitting condition. *See Chatman v. DOD*, 270 F. Supp. 3d 184, 185 (D.D.C. 2017) (citing 10 U.S.C. §§ 1201-22, 1552-59).

Under DoD's process, a soldier is first referred to the medical evaluation board ("MEB") for evaluation if the soldier has a medical condition "which may render [him] unfit for further military service and which fall below" required medical fitness standards. Army Regulation ("Army Reg.") 40-501, ¶ 3-1. But "[p]ossession of one or more of [the medical conditions] does not mean automatic retirement or separation from the Service." *Id.* ¶ 3-4. Instead, the MEB evaluates whether the soldier meets the retention standard criteria in Army Regulation 40-501. *Id.* Relevant here, sleep apnea can be cause for a finding that a soldier does *not* meet the retention standards when it causes "daytime hypersomnolence [i.e. severe sleepiness] or snoring that interferes with the sleep of others and that cannot be corrected with medical therapy, surgery, or oral prosthesis." *Id.* 3-41(*c*).

If the soldier does *not* meet the retention standard, the MEB refers the soldier to a physical evaluation board ("PEB"). *Id.* ¶ 3-4; Army Reg. 635-40, ¶¶ 4-10, 4-13 (Sept. 1, 1990). The PEB then "consider[s] the results of the MEB, as well as the requirements of

the soldier's [military occupational specialty],[1] in determining fitness" or unfitness. Army
Reg. 40-501, ¶ 3-4; Army Reg. 635-40, ¶ 4-17. In other words, the PEB conducts "a more
thorough investigation into the nature and permanency of the servicemember's condition
and makes independent findings as to whether the servicemember is fit for duty and
qualifies for disability retirement." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 85-86 (D.D.C.
2014). A case so referred begins with an informal evaluation and decision by the PEB.
Army Reg. 635-40, ¶ 4-20. Thereafter, a soldier may either concur with the informal PEB
decision or demand a formal hearing and present rebuttal findings and recommendations.
*Id.* ¶ 4-21.

At the time of plaintiff's evaluation, the PEB's decision was governed by DOD
Instruction 1332.38 Physical Disability Evaluation ("DoDI 1332.38"). Under DoDI
1332.38, a servicemember is unfit "when the evidence establishes that the member, due to
physical disability, is unable to reasonably perform the duties of his or her office, grade,
rank, or rating ...." DoDI 1332.38, ¶ E3.P3.2.1. Only soldiers who the PEB determines
are "unfit" may be entitled to retirement or separated with disability benefits. *Id.* ¶ E3.P4.1.
The PEB provides a disability rating for each of the unfitting conditions, represented by a
percentage. For plaintiff to receive a military disability retirement (and accompanying
benefits), he needs a combined disability rating of at least 30%. 10 U.S.C. § 1201.

---

[1] A "military occupational specialty" ("MOS") identifies "a group of duty positions that
require closely related skills" "without regard to levels of skills." Army Reg. 600-1, ¶ 6-4.

Congress established the Physical Disability Board of Review to assess the findings and decisions of PEB decisions for former servicemembers who were discharged between September 11, 2002 and December 31, 2009 with a disability rating of 20% or less. 10 U.S.C. § 1554a. The PDBR reviews the PEB's decisions, the evidentiary record, and other evidence submitted by the soldier. *Id.* § 1554a(c). The Board then submits a recommendation to the Secretary of the Army concerning whether to modify the disability rating or recharacterize the soldier's discharge from a separation to a medical retirement. *Id.* § 1554a(d). If the Board does not recommend changing the record, the decision is final. *Id.* § 1554a(e). But if the Board recommends changing the record, the Deputy Assistance Secretary of the Army (Review Boards) is permitted to change the records on behalf of the Secretary. *Id.*

## II.  Procedural History.

Plaintiff served in the U.S. Army from July 1995 until he was honorably discharged as a Sergeant in June 2003. Pl.'s Mot. at 3 (Administrative Record ("AR") 20); Def.'s Mot. at 4 (AR 600). While in the Army, plaintiff served as a signals intelligence analyst. Pl.'s Mot. at 4 (AR 20); Def.'s Mot. at 4-5 (AR 600). His last duty assignment in the Army was at the National Security Agency ("NSA"). Pl.'s Mot. at 4; Def.'s Mot. at 28.

According to plaintiff's annual evaluations, he was an exemplary soldier. Between November 2000 and April 2001, plaintiff received the highest rating of "1-1" and a rating of "excellence (exceeds standards)" in "Physical Fitness & Military Bearing." AR 264-65. Plaintiff maintained his 1-1 ranking the following year, exceeded the battalion fitness goal, and even completed courses at the National Cryptologic School and University of

4

Maryland.   AR 262-63.   Plaintiff was recommended for early promotion because he "perform[ed] all duties to the highest standards." *Id.*

Plaintiff's claim here concerns his obstructive sleep apnea ("OSA").   OSA is a breathing disorder that occurs "during sleep due to narrowing or total closure of the airway," resulting "in fatigue, excessive daytime sleepiness and more serious physiological problems including irregular heartbeat, high blood pressure and occasionally heart attack or stroke."   AR 324.

Plaintiff was first referred to a medical evaluation board in August 2002, after a basketball injury in 1998 resulted in ongoing knee issues.   Pl.'s Mot. at 4; Def.'s Mot. at 5 (AR 244-46).   During plaintiff's MEB examination on August 12, 2002, plaintiff completed a "Report of Medical History," in which he did *not* report having frequent trouble sleeping or any complaints attributable to OSA.   AR 449-51.   But the next day, plaintiff told the physician conducting his interview that he would wake up once or twice a month and be unable to fall back to sleep, woke up feeling tired once or twice a week, and reported that his wife noted his snoring and her difficulty waking him up.   Pl.'s Mot. at 4 (AR 51); Def.'s Mot. at 5 (AR 448).

As part of the MEB examination, plaintiff's commanding officer drafted a memorandum that included his observations on plaintiff's performance as related to his knee injury.   AR 255.   The commanding officer's report does *not*, however, mention plaintiff's OSA or any concerns related to fatigue.   *Id.*   The report concludes that plaintiff's "current physical condition [did] not prevent him from performing any of his assigned duties." *Id.*

5

Plaintiff underwent a series of sleep evaluations between September 2002 and January 2003 while the MEB process was still pending. Plaintiff scored between a 6 and a 10 out of 24 on the Epworth Sleepiness Scale, which is a self-assessment that rates sleepiness, with the higher scores indicating more sleepiness. AR 458, 439, 440. In October 2002, the MEB referred plaintiff to a physical evaluation board to assess his OSA further. AR 231.

A month later, in November 2002, plaintiff was diagnosed with severe OSA and opted to try a continuous positive airway pressure ("CPAP") device to treat his OSA. Pl.'s Mot. at 5 (AR 52); Def.'s Mot. at 5 (AR 440).

In February of 2003, the informal PEB found plaintiff fit for duty, stating that he could "train for and perform an alternate aerobic event for the [Army Physical Fitness Test] and perform all the functional activities of a soldier." AR 237. This PEB, however, did not address OSA. *Id.*

Plaintiff appealed the PEB's findings and informed the PEB of his OSA diagnosis. AR 239-40. Plaintiff included a letter from his treating sleep disorder provider, who stated that plaintiff was diagnosed with OSA and—although his CPAP usage was improving— was having trouble adjusting to CPAP. AR 240. Notably, the sleep disorder specialist stated that plaintiff "could be deemed deployable" if plaintiff used—and showed improvement with—an oral device, which he was in the process of obtaining. *Id.* Apart from this comment on deployability, the provider's letter does *not* mention any daytime symptoms or limitations from plaintiff's OSA. *Id.*

In response to plaintiff's appeal of the PEB findings, the Army conducted an informal reconsideration PEB on March 6, 2003.   AR 229-30.   The informal reconsideration PEB concluded that plaintiff's OSA was "not unfitting," and plaintiff concurred with these findings and waived a formal hearing on March 14, 2003.  AR 230. Plaintiff voluntarily separated from the Army in June 2003. Pl.'s Mot. at 6 (AR 20); Def.'s Mot. at 7 (AR 600).

After he left the Army, plaintiff worked as a system engineer for Titan Corporation. AR 221.  In December 2003, plaintiff underwent a Department of Veterans Affairs ("VA") Compensation and Pension Examination ("C&P Exam").  AR 40-44, 221-24.  During the C&P Exam, plaintiff discussed his OSA and shared his wife's complaints that he snored loudly and would stop breathing at night, which made him "tired during the day." AR 224. Plaintiff reported using a CPAP machine but not regularly.  *Id.*  The VA awarded plaintiff with a 50% rating for sleep apnea, effective June 5, 2003, based on his use of the CPAP machine.  AR 40-44.

In 2014, plaintiff applied for review to the PDBR and requested a disability retirement, arguing, among other things, that the PEB should have found his OSA "unfitting." Pl.'s Mot. at 2 (AR 31); Def.'s Mot. at 9 (AR 117-18).  In 2016, the Deputy Secretary of the Army approved the PDBR's recommendation, which increased plaintiff's disability rating from 0% to 10% based on his chronic *knee pain*.  AR 115-16.  But—for plaintiff's OSA—the PDBR "recommend[ed] no change from the PEB's determination[] as not unfitting," finding that "[t]here was no performance based evidence from the record that [OSA] significantly interfered with satisfactory duty performance." AR 115.

7

Plaintiff filed this lawsuit on August 5, 2019, challenging the PDBR's determination under the APA. *See* Compl. On October 4, 2019, I granted the parties' joint motion for voluntary remand and stayed the proceedings so that the PDBR could reconsider whether plaintiff's OSA is unfitting. *See* Order [Dkt. # 6].

On December 19, 2019, the PDBR issued a new decision. After reviewing and analyzing the evidentiary record and evidence submitted by plaintiff, it concluded that "there was insufficient cause to recommend a change in the PEB fitness determination for the OSA condition." Pl.'s Mot. at 3 (AR 3-5); Def.'s Mot. at 10 (AR 3-10). The Deputy Assistant Secretary of the Army concurred with the Board's recommendation on December 19, 2019. AR 1. On April 27, 2020 and May 1, 2020, respectively, plaintiff and defendant filed their motions for summary judgment based on the Board's December 19, 2019 decision. Pl.'s Mot.; Def.'s Mot. The parties cross-motions for summary judgment are now ripe for review.

## ANALYSIS

### I.     Standard of Review

When courts review cross-motions for summary judgment under the APA, courts do not apply the summary judgment standard contained in Federal Rule of Civil Procedure 56. *Stewart v. Stackley*, 251 F. Supp. 3d 138, 155 (D.D.C. 2017). Rather, the district court "sits as an appellate tribunal" and "the entire case ... is a question of law." *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (quotations omitted). Courts will thus defer to the agency's "findings of fact if they are supported by substantial evidence and the [Agency's] other findings and conclusions if they are not arbitrary,

capricious, an abuse of discretion, or contrary to law." *Montgomery Kone, Inc. v. Sec'y of Labor*, 234 F.3d 720, 722 (D.C. Cir. 2000) (quotations and citation omitted); *see also* 5 U.S.C. § 706(2)(A).

A court will, therefore, defer to the agency's reasonable interpretation of the facts, even if the court found another plausible interpretation on its own review of the record. *See Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) ("When reviewing for substantial evidence [the Court] do[es] not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision.") (citation omitted); *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) ("Substantial-evidence review is highly deferential to the agency fact-finder, requiring only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).[2]

Moreover, in reviewing agency action, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. That is because, "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (citation omitted).

---

[2] "The arbitrary and capricious standard of § 706(2)(A) is a 'catchall' that generally subsumes the 'substantial evidence' standard of § 706(2)(E)." *Schmidt v. Spencer*, 319 F. Supp. 3d 386, 391 n.3 (D.D.C. 2018) (citing *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984).

Defendant argues that this Court should apply a heightened deference standard to the Board's decision. Def.'s Mot. at 19-20. Plaintiff does not contest this point, even though the exact level of deference that this Court owes to the Board's decision has yet to be established in our Circuit.

While defendant is correct that courts in our Circuit have afforded heightened deference to certain decisions by military review boards, *see, e.g., Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)); *Schmidt*, 319 F. Supp. 3d at 391; *Chamness v. McHugh*, 814 F. Supp. 2d 7, 13 (D.D.C. 2011); *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009), those courts have distinguished between "military judgment requiring military expertise," which necessitates the "unusually deferential standard," and "review of the Board's application of a procedural regulation governing its case adjudication process," which only requires the typical APA standard, *see Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005). To date there have been very few cases reviewing decisions of the PDBR in our Circuit, and only one of them has addressed the appropriate level of deference.[3] Fortunately, however, I need not resolve the appropriate level of deference to the Board's

---

[3] In *U-Ahk-Vroman-Sanchez v. DOD*, Judge Mehta declined to apply the unusually deferential standard because the underlying statute, 10 U.S.C. § 1554a, "does not exude deference to the same degree" as other statutory schemes to which our Circuit applies the unusually deferential standard. No. 19-cv-3141 (APM), 2021 WL 394811, at *4-5 (D.D.C. Feb. 4, 2021). Further, "[c]oncerns over interference with military affairs ... are not present here to the same degree." *Id.* at *5.

decision here because, for the following reasons, it was neither arbitrary nor capricious under the less deferential APA standard.

## II.    The Board's Decision Finding Plaintiff Fitting is not Arbitrary and Capricious nor Unreasonable.

Plaintiff first argues that the Board's decision is arbitrary and capricious because the "PDBR failed to consider factors it should have considered[,] and it also considered factors it should not have considered." Pl.'s Mot. at 10-17.  Defendant contends that it is entitled to summary judgment because the Board "reasonably explained its decision" and "provid[ed] a rational connection between the facts found and the choice made." Def.'s Mot. at 20 (quotation and citation omitted).  Unfortunately for plaintiff, I agree with defendant that the Board's decision considered the appropriate evidence, was reasonably explained, and provided a rational connection between the evidentiary record and its conclusion.

The Board's final decision was well supported by the evidentiary record. The Board's focus was on whether plaintiff was able to "reasonably perform the duties of his … office, grade, rank, or rating." AR 5.  In support of its decision, the Board relied on the limited objective evidence in the record regarding plaintiff's performance. AR 6.  Namely, the Board considered, and found persuasive, plaintiff's high marks in his annual review, the favorable report from his commanding officer, and his ability to continue working as a system engineer—in a "comparable capacity"—after he left the Army. *Id.* In addition, the Board noted the paucity of performance-based evidence that plaintiff's OSA negatively interfered with plaintiff's performance. *Id.* Indeed, based on the evidence in the record,

11

his exemplary performance undermined his claim that his OSA adversely affected his ability to carry out his duties.

The Board, of course, also considered the relevant evidence contained in plaintiff's medical records, including plaintiff's own reporting of his OSA symptoms, his sleep trial evaluations, his OSA diagnosis, his CPAP treatment, his C&P examination, and the sleep specialist's report. AR 3-5. The only objective evidence in these medical records evincing a limitation on plaintiff's ability to perform his duties was the sleep specialist's opinion that plaintiff's OSA was an impediment to deployment. AR 5. But the Board concluded that the sleep specialist's opinion was insufficient to demonstrate that plaintiff's OSA rendered him unfit. First, the Board noted that, under DoDI 1332.38, plaintiff's inability to deploy was not crucial to fitness.[4] *Id.* Second, the Board explained that, as a practical matter, "CPAP does not logistically prohibit deployment or assignment to any but the most austere of locations." AR 6.

Furthermore, the Board gave careful consideration to plaintiff's contention that his daytime sleepiness and other OSA symptoms impeded with his MOS requirements, as articulated in plaintiff's declaration. *Id.* (referring to AR 29-30). The Board noted a "disparity between the frequency of symptoms as related in the [Service Treatment Record] evidence and [plaintiff's] contemporary memory as expressed in his declaration." *Id.*

---

[4] The Board cited to ¶ E3.P3.4.1.3 of DoDI 1332.38, which states that the "inability to perform the duties of his … office, grade, rank or rating in every geographic location and under every conceivable circumstance will not be the sole basis for finding unfitness." AR 5 (referring to AR 8).

Plaintiff's declaration states that on most days he was tired, irritable, and unable to focus and, on some days, even dozed off at his desk. AR 29-30. The rest of the record—especially plaintiff's positive annual reviews and the report from his commanding officer—do *not* reflect any issues with these symptoms. AR 255, 262-63, 264-65. The Board reasoned that—although some of these symptoms "might escape supervisory attention"—plaintiff's "critical and sensitive work" would "logically have entailed close monitoring." AR 6. Thus, if plaintiff's symptoms occurred with any significant frequency, it "most likely would have been noted and addressed" or "reflected in the [non-commissioned officer evaluation report]." *Id.*

Consequently, the Board found that "there was no evidence that [plaintiff's OSA symptoms] were of a severity that unacceptably compromised [plaintiff's] overall performance" and, therefore, there was "insufficient cause to recommend a change in the PEB fitness determination." *Id.* As such, the Board's determination provides a rational basis—supported by the evidentiary record—for its conclusion that plaintiff's OSA did not render him unfit.

Plaintiff, not surprisingly, disagrees. He raises seven arguments that contend that the Board's decision was arbitrary and capricious because it failed to consider evidence or standards that it should have considered or, conversely, considered evidence or standards that it should not have considered. Pl.'s Mot. at 10-17. Unfortunately for plaintiff, each argument is without merit.

First, plaintiff contends that the Board failed to consider the Army regulations, arguing that the "Army regulations controlled Mr. Hall's case absent a conflict with the

DODI." Pl.'s Mot. at 10.  Plaintiff argues that the Army regulations should control to the extent they contain elaborations on the DoDI.  *Id.*  Plaintiff concedes, however, that—if there is a conflict between the DoDI and the Army DES regulations—the DoDI controls. Pl.'s Mot. at 7-8 (citing *Collins v. United States*, 101 Fed. Cl. 436 (2011)).  But I need not decide the extent to which the Board was required to rely on the Army regulations instead of the DoDI because even if the Army regulations should have controlled any relevant differences between the two are, at best, harmless.[5]  *See Air Canada v. DOT*, 148 F.3d 1142, 1156 (D.C. Cir. 1998) ("As incorporated into the APA, the harmless error rule requires the party asserting error to demonstrate prejudice from the error.") (citing 5 U.S.C. § 706).

Second, plaintiff contends that the Board should not have considered the DoDI without giving plaintiff notice and an opportunity to respond.  Pl.'s Mot. at 12 (citing 5 U.S.C. § 552(a)).  The record shows that plaintiff only requested that the PDBR provide

---

[5] Plaintiff first argues that the Army regulations expand on the relative importance of a soldier's deployability when it states that a soldier's ability to deploy "is a *key to maintaining an effective and fit force* ...." Pl.'s Mot. at 11 (citing AR 823) (emphasis added).  But the Army regulations contains the exact same *conclusion* as the DoDI regulations: "[T]his criterion (world-wide deployability) will not serve as the sole basis for a finding of unfitness." AR 823.  Therefore, even if the Board determined that plaintiff was unable to deploy worldwide due to his OSA, without more, the Board could not have found him unfit. Second, plaintiff argues that the retention standards in the Army regulations "include guidelines for applying them to fitness decisions in individual cases," while the DoDi does not. Pl.'s Mot. at 11-12.  Plaintiff does not, however, identify any specific guidelines in the Army Regulation's retention standards that differ from the DoDI, nor has plaintiff identified how any purported difference prejudiced him. Finally, plaintiff attempts to find daylight between the DoDI's use of "may" and the Army Regulation's use of "might." Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 4-5.  While there may be cases where a distinction between may and might is relevant, this is not such a case.

"[w]hatever regulations the PDBR relies upon … in the administrative record for judicial review." AR 16. And plaintiff ultimately received a copy of the DoDI. *See* Pl.'s Doc. App. [Dkt. # 11-3]. In any event, this argument fails for the same reason as his first argument. Plaintiff does not identify any material differences between the DoDI—which the Board relied on—and the Army regulations—which he believed the Board should have relied on. Thus, plaintiff has not demonstrated how the Board's use of the DoDI prejudiced the Board's decision.

Third, plaintiff next argues that the Board's conclusion that plaintiff's OSA could have improved with corrective surgery or that he could have deployed with continued use of CPAP in "any but the most austere of locations" was based on speculation or conjecture. Pl.'s Mot. at 12-13. Regarding plaintiff's potential improvement with continued CPAP use or corrective surgery, the Board's conclusion here was not based on conjecture or speculation. It was based on a sleep specialist's opinion. AR 5-6. Further, while the Board *considered* the sleep specialist's opinion about potential improvement, it ultimately *relied* on the paucity of evidence in the record indicating that plaintiff's OSA "interfered with satisfactory duty performance." *Id.*

Regarding plaintiff's potential deployment with a CPAP device, plaintiff further contends that "the fact he could not function in demanding environmental conditions [per his MOS] means he could not meet a core requirement of his MOS." Pl.'s Mot. at 13. But this argument ignores the Board's guidance that "[i]nability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will *not be the sole basis for finding unfitness.*" DoDI 1332.38, ¶ E3.P3.4.1.3

15

(emphasis added).  Furthermore, having no evidence in the record that plaintiff could *not* deploy to most locations, the Board reasonably concluded that plaintiff—like most soldiers—would be able to deploy to all but the most austere locations with a CPAP.[6]  AR 5-6.

Fourth, plaintiff argues that the Board did not consider his common military tasks as a signal intelligence analysis.  Pl.'s Mot. at 13-15.  Specifically, he argues that his MOS description requires "complex analysis techniques" and "perceptual speed," which—according to medical literature—would have been affected by his OSA symptoms.  *Id.* at 14 (citing AR 49, 69); *see also* Pl.'s Opp'n at 12-13.  But the Board explicitly compared the performance-based evidence in the record to his MOS, noting that the only relevant evidence "were the commander's opinion that he was able to perform all assigned duties during a period affected by OSA limitations, the very favorable [annual reviews] (especially the one overlapping OSA symptoms), and the fact that he continued to perform in a comparable capacity for the probative period after separation."  AR 6.  Further, the Board considered the medical literature.  AR 3.  The Board reasonably relied on objective

---

[6] Plaintiff also relies on a Walter Reed Army Hospital Consent Form and Central Command policy for support of his argument that his OSA made him undeployable.  Pl.'s Opp'n at 9-11.  But the consent form merely says that required use of CPAP for more than a year "*may* render a service member non-deployable."  AR 324.  This, of course, provides no insight into whether *plaintiff* was deployable.  As for the Central Command policy, even if the policy was in effect and binding on the Army at the time of the Board's decision (which it was not), all it requires is that a servicemember is individually assess for deployability.  *See* Pl. Doc. App. (Pt. II) at 120.  It does not—as plaintiff argues—prohibit deployment with OSA symptoms.  *See id.* at 117 ("Possession of one or more of the conditions listed in this tab does not automatically imply that the individual may not deploy.").

evidence concerning *plaintiff's* ability to perform his MOS rather than generic medical literature that describes the full array of OSA symptoms.   Simply put, plaintiff's *disagreement* with the Board's conclusion on this point is an insufficient basis to find its decision arbitrary and capricious.

Fifth, plaintiff argues that the Board speculated when it compared his post-separation employment to his military MOS. Pl.'s Mot. at 15.  But the Board's conclusion was not based on speculation.  The record shows that plaintiff acquired and maintained work as a "system engineer" "for a corporation specializing in information and communication products for intelligence agencies."  AR 6 (referring to AR 221).  Based on this description, the Board reasonably concluded that plaintiff's work as a system engineer was comparable to his work in the Army and that plaintiff's continued employment as a system engineer was further evidence of his ability to perform his MOS.

Sixth, plaintiff argues that the Board speculated as to his performance at NSA. Pl.'s Mot. at 15-17.  Not so.  The Board relied on favorable performance reviews to determine that plaintiff was able to perform his duties successfully during the time he was experiencing OSA symptoms at NSA.  AR 6.  The Board also noted that these reviews *lacked* any evidence of plaintiff's OSA interfering with his work.  *Id.*  To say the least, it was reasonable for the Board to deduce that if plaintiff's OSA symptoms (i.e. dozing off and irritability) were as frequent as he reported in his unsworn declaration, it was likely that a supervisor would have noticed and addressed the issue, especially due to the close monitoring that likely comes with such critical and sensitive work.  *Id.*  This conclusion both served to undermine the veracity of plaintiff's unsworn declaration and to highlight

the lack of evidence demonstrating that plaintiff's OSA affected his performance.  The Board's analysis on this point—contrary to plaintiff's contention—does not amount to speculation because it was based on the evidence in the record.

And finally, seventh, plaintiff contends that the Board erroneously imposed a "performance-based" evidentiary standard that does not appear in the DoDI.  Pl.'s Mot. at 17.  Further, he contends that it is possible for a soldier to perform adequately in a current assignment and still be considered "unfit" because he cannot perform common military tasks of his MOS.  *Id.*  Contrary to plaintiff's argument, however, the DoDI requires the Board to assess whether plaintiff reasonably performed his duties.  DoDI 1332.38, ¶ E3.P3.4.   And a determination regarding plaintiff's performance logically requires evidence that is, in fact, based on his performance.[7]  Here, the Board evaluated the objective performance evaluations in the record for evidence that plaintiff's OSA affected his performance.  AR 6.  Finding none, the Board reasonably concluded that plaintiff was fitting.  *Id.*

---

[7] Plaintiff argues that a performance-based evidentiary standard would require plaintiff "to fall asleep at a combat firebase in Afghanistan to show that his severe OSA symptoms preclude him from working 'for a long period of time under a great deal of mental stress.'" Pl.'s Reply Br. in Supp. of Mot. for Summ. J. at 12.  Please!  The Board did not exact a performance-based evidence standard requiring complete performance failure. Rather, the Board was looking for *some evidence* that plaintiff's OSA negatively impacted his performance.

**III.    Plaintiff's Claims that the Board's Decision Were Not in Accordance with the Law are Absent from His Complaint.**

Finally, plaintiff raises two arguments that the Board's proceedings were not in accordance with the law. Pl.'s Mot. at 17-19. First, plaintiff argues that the appointment of the PDBR members violated the Appointments Clause of the United States Constitution because their appointment was delegated to the service secretaries under DoDI 6040.44, instead of remaining with the Secretary of Defense under 10 U.S.C. § 1554a(a)(2). Pl.'s Mot. at 18. Second, plaintiff contends that the Board failed to follow the procedures under DoDI 6040.44 and Air Force Instruction 36-3035 because the Board contained a medical officer as a voting member. Pl.'s Mot. at 19. Unfortunately for plaintiff, the first time he raised these arguments was in his motion for summary judgment. Not only is it "a hard and fast rule of administrative law ... that issues not raised before an agency are waived and will not be considered by a court on review[,]" *Nuclear Energy Inst. Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004), but—more concerning here—it is axiomatic "that a party may not amend its complaint or broaden its claims through summary judgment briefing," *Bean v. Perdue*, 316 F. Supp. 3d 220, 226 (D.D.C. 2018) (quotations and citations omitted). These claims do not appear in plaintiff's complaint, nor has plaintiff moved to amend his complaint. Accordingly, I will not consider them.

## CONCLUSION

The Board's decision provided a rational connection between the evidentiary record and its conclusion that plaintiff's OSA did not render him "unfitting" for continued service in the Army. The Board articulated the basis for its decision and supported it with

substantial evidence in the record. Plaintiff's arguments to the contrary are simply without merit. And his arguments that the Board's decision was not in accordance with the law are not appropriately before the Court. Therefore, defendant's motion for summary judgment [Dkt. #12] is **GRANTED,** and plaintiff's motion for summary judgment [Dkt. #18] is **DENIED**. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

20